# Montgomery's Estate, Appellant, *v.* Pittsburg.

*Road law—Paving—Grading—Ordinance—Deviation from line of street.*

A city passed an ordinance locating the center line of a street. Subsequently an abutting owner with others filed a petition for the grading of the street. In laying out and grading the street there was, in one portion of it, a deviation of from two to ten feet from the line designated in the ordinance authorizing the opening of the street. In proceedings for damages for the grading the petitioning owner filed exceptions, setting up the deviation. While these proceedings were pending a majority of the owners petitioned for the paving of the street and a paving ordinance was passed.

The city officials, however, hesitated to proceed because of the mistake in the grading, and thereupon several of the property owners signed an agreement waiving any objection they had by reason of the mistake. Subsequently the owner who had filed exceptions in the grading proceedings withdrew these exceptions, and the city thereupon proceeded to pave the street according to its graded lines. It did not clearly appear that any portion of the pavement was outside the lines of the street as originally ordained. Subsequently proceedings were instituted to assess damages for the paving. *Held*, that the owner who had withdrawn her exceptions to the grading proceedings, if not estopped from objecting to assessments for the paving because of the deviation, was not entitled to binding instructions that she was not liable for any portion of the assessment.

Argued April 11, 1905. Appeal, No. 141, April T., 1905, by The Union Trust Company of Pittsburg, Administrator of Johanna Montgomery, deceased, from judgment of C. P. No. 3, Allegheny Co., Nov. T., 1902, No. 489, on verdict for the City of Pittsburg in case of Johanna Montgomery's Estate, The Union Trust Company of Pittsburg, Administrator, c. t. a. v. City of Pittsburg. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Appeal from report of viewers. Before KENNEDY, P. J.

The facts appear by the opinion of the Superior Court.

At the trial the jury returned a certificate in favor of the city of Pittsburg for $1,038.81, special benefits, subject to question of law reserved. Subsequently the court entered judgment for the city on the verdict.

*Error assigned* was in entering judgment for the city on the verdict.

*Wm. M. Hall, Jr.*, with him *Horace J. Miller* and *Watson B. Adair*, for appellant.—A city can create a valid municipal lien for street improvements only when the improvement is made in pursuance of law and the mode established by statute or ordinance is strictly followed: Coxe v. Philadelphia, 47 Pa. 9; Hershberger v. Pittsburg, 115.Pa. 78 ; Morewood Avenue, 159 Pa. 39; Scranton v. Kingsbury, 4 Pa. Dist. Rep. 555; Western Penna. Railway Co. v. Allegheny, 92 Pa. 100 ; Fell v. Philadelphia, 81 Pa. 58; Wilson v. Allegheny, 79 Pa. 272; Reilly v. Phila. 60 Pa. 467.

*T. D. Varnahan,* with him *W. B. Rodgers,* for appellee.—
The appellant is estopped : Shiloh Street, 165 Pa. 386.

Mrs. Montgomery's property does not abut upon that part
of the street which appellant claims was unlawfully shifted.
It is several hundred feet distant from the point of change and
is not affected by it. She has therefore no reason to complain :
Erie v. Butler, 120 Pa. 374 ; Pittsburg v. MacConnell, 130 Pa.
463.

OPINION BY RICE, P. J., October 9, 1905 :

This is an appeal from a judgment upon a verdict in an
issue framed for the determination of the damages and benefits
to the appellant's property arising out of the paving and curb-
ing of Flowers avenue in the city of Pittsburg between Folsom
street and Calvary cemetery. The prior proceedings stated
chronologically were as follows : April 4, 1878, ordinance locat-
ing center line of Flowers avenue ; April, 1878, petition of
property owners for passage of ordinance authorizing the open-
ing of the street; July 12, 1878, ordinance authorizing and
directing the city engineer to 'survey and open the street at
width of fifty feet " in accordance with a plan on file in the
engineer's office approved by " the first mentioned ordinance,
and providing that the damages and benefits be assessed and
collected in accordance with the act of January 6, 1864, con-
cerning streets and sewers in the city of Pittsburg and its
supplements ; September, 1897, petition of Johanna Montgomery
and others, being a majority in interest and number of owners
of property on Flowers avenue between Folsom street and
Calvary cemetery line, for the passage of an ordinance author-
izing the grading of the street between the points named ;
October 11, 1897, ordinance establishing the grade of the street;
December 6, 1897, ordinance pursuant to above petition author-
izing the grading of the street, and providing that the cost
and expense be assessed and collected in accordance with the
statutes relating thereto and regulating same ; April, 1900,
petition of majority in interest and number of owners of abut-
ting properties for passage of ordinance authorizing the pav-
ing and curbing of the street between the points above men-
tioned ; April 24, 1900, ordinance pursuant to above petition
providing that the street be paved and curbed, and that the

cost, damages and expenses be assessed against and collected from properties specially benefited ; September 13, 1902, report of viewers assessing $1,038.81 as special benefits against the property of the estate of Johanna Montgomery ; October 13, 1902, appeal on behalf of estate of Johanna Montgomery, deceased, to the court of common pleas, which resulted in a verdict against the estate for the sum named, subject to the question of law reserved, " whether there is any evidence to be submitted to the jury entitling the city of Pittsburg to recover special benefits." The court in an opinion filed by the learned president judge decided the question in favor of the city and entered judgment on the verdict. The matters assigned as error are, first, the discharge of the appellant's rule to show cause why judgment should not be entered in favor of the city without a certificate in its favor and the verdict set aside as to such certificate ; second, deciding adversely to the appellant the question of law reserved.

The line of the street as opened, graded and paved in front of the appellant's property corresponds exactly with the line described in the locating ordinance of April 4, 1878, but it was claimed on the trial that at a point several hundred feet further east and from there to the eastern terminus the former line deviated materially from the later. This was the ground of their defense.

It appears that the latter line has six angles, and that the fifth course, as set forth in the ordinance (the filed plan referred to in the opening ordinance was not brought up for our inspection) is " thence deflecting 11° 58' left a distance of 247.23 feet to east five feet running line of E avenue," now called Eddington street. According to the testimony of appellant's witness, who was the city engineer at the time of the grading of the street but not at the time of the trial, the actual distance between the beginning point of this course and the five feet running line of Eddington street is 196.39 feet, or 50.84 feet less than the distance specified by the ordinance. He testified that in the survey made preliminary to the grading (Eddington street had not been opened upon the ground at this time) the above discrepancy was discovered and called to his attention, but he concluded, and so directed, that the distance specified in the locating ordinance of April 4, 1878 would control. The

work was done in accordance with his direction, with the result that east of Eddington street the centre line of Flowers avenue, as graded, deviated from two to nine and one-half feet from the true center line, assuming that the call for the east running line of Eddington street, and not the specified distance, determined the true location of the angle at the end of the fifth course. The street was paved and curbed exactly on the line of the graded street. On the trial of the issue the appellant set up and gave evidence tending to prove the above deviation, but we find no intimation in the testimony of any of their witnesses to support the claim now made, that owing to a failure to follow the true course of the above mentioned section of the line, there is a variance of 460 feet between the eastern terminus of the street as graded and paved and the eastern terminus of the street as described in the locating ordinance of April 4, 1878. On the contrary, the clear import of the testimony of their witnesses is, that, except for the divergence caused by taking the specified length of the fifth course, instead of the call for the running line of Eddington street, as the controlling element in the description, the street as graded and paved conforms to the requirements of the locating ordinance. The map offered in evidence by them shows the same. The appellants called no other witness to explain or contradict this testimony, and made no suggestion by point or otherwise, so far as the record shows, calling the attention of the trial judge to any other claim of variance. None other was alluded to in his charge. Without going further into detail as to the position taken by the parties, we conclude, that as the case was presented by the appellants on the trial the city is not called upon to meet any other objection to the liability of their property to assessment and that the case should be disposed of here upon that theory.

It is not disputed that the petition for paving was signed by the required number of property owners, but it is argued that, in order to sustain the assessment of the cost upon the abutting property " it must appear affirmatively that there was a petition for the paving of the street as paved," which it is alleged does not appear in this case. In considering this proposition it is important to notice that the grading of the street had been completed between three and four months before the

petition for paving was presented, and that the ordinance under which the grading was done contemplated an assessment of the cost and expenses upon abutting properties, to the extent of benefits conferred, and it is stated in the opinion of the learned judge below that the latter proceedings were pending at that time. In view of these facts, it seems plain, as he says, that the property owners " were asking for the completion of the improvement of the street as they found it on the ground already partly improved and well known to everybody in the street." The petition was broad enough in terms, and interpreted in the light of attendant circumstances, was broad enough in intent, to sustain the assessment if that was all that was required.

It is further urged that a city can create a valid municipal lien for street improvement only when the improvement is made in pursuance of law and the mode established by statute or ordinance is strictly followed. We are referred to the principle thus stated by Justice MERCUR in Western Penna. Railway Co. v. Allegheny, 92 Pa. 100 : " The city can create a valid municipal lien for improving a street only when the improvement is made in pursuance of law. The street must first be duly established. Its width must be fixed, and the improvement made within its lines, before the expense thereof can be imposed on the lands of an adjoining owner." But we suppose that it will not be disputed that the property owners may estop themselves to deny in the subsequent proceeding to assess the damages and benefits that the improvement is within the proper street lines. This case furnishes an apt illustration. After the street had been graded upon the lines determined upon by the city engineer as above stated, and the paving ordinance had been passed and the contract let, the city officials hesitated to proceed because of the mistake in the grading of the street above referred to, if it was a mistake. Thereupon thirteen of the property owners, we quote from the judge's charge, " signed an agreement, waiving any objection they had to the paving of the street, in accordance with the lines thereof, that had been graded, waiving any objection to that, or any right they might have to contest the assessment as made, and they asked the city to proceed and pave the street just as it had been graded." Assuming these to be the facts and that the city was induced

by their action to proceed with the paving of the street upon the lines within which it had been opened and graded, we think he was right in saying, so far as these persons were concerned, " Having done that, it does not lie in their mouths now to object to any assessment by reason of that change in the location of the street, the shifting of it to one side." It is true Johanna Montgomery did not sign this paper, but it does appear that she and Mr. Haynes, who procured the paper to be signed and acted upon by the city officials, had previously filed exceptions to the assessment of benefits reported by the viewers in the grading proceedings in which she alleged that the location of the street had been shifted, and that about the same time the paper was signed these exceptions were withdrawn by them pursuant to leave of court formally granted upon their joint application. The city then went ahead and completed the payment upon the exact lines of the street as actually opened upon the ground and graded. We do not see how it can be doubted that under the doctrine of Shiloh Street, 165 Pa. 386, the action of the city engineer in locating the street upon the ground under the grading ordinance was adopted and ratified by the city. See also Tarentum Boro. v. Moorhead, 26 Pa. Superior Ct. 273, and cases there cited. Further, bearing in mind that Johanna Montgomery was one of the petitioners for the grading of the street, and that she withdrew her exceptions at the time when, of all others, it was appropriate that she should raise the question whether the street as opened on the ground and graded was on the true line, it may well be doubted whether she could consistently raise the objection after the city had laid the pavement upon the faith, in part, of her action.

Granting, however, that she and those who succeeded to the property upon her death were not estopped to deny that in grading that section of the street a mistake was made, in consequence of which the center line of the street as graded is from two to nine and one-half feet north of the center line called for by the ordinance of 1878, how does the case stand? Beginning at Folsom street and extending along the front of appellant's property and several hundred feet beyond, the pavement was laid within the lines of the street as claimed by them and of the full width of thirty feet. Beyond that to the other terminus the width of the pavement is the same, and even if

it be conceded that its center line deviates from the center line of the street from two to ten feet, yet as the street is fifty feet wide this deviation would not necessarily put any part of the pavement outside the street lines and make the case parallel with Western Penna. Railway Co. v. Allegheny, 92 Pa. 100. Moreover in that case the trespass in building the wall on the land of the company against the protest of the latter did not stand in the way of the recovery by the city for the paving and curbing, which, with the wall, constituted the improvement for which the lien was claimed. · As pointed out in the later case of Athens Boro. v. Carmer, 169 Pa. 426, for what was lawfully done the city was allowed to recover. So here, even if it be conceded, which does not clearly appear, that from two to nine and one-half feet of the pavement on the north side of the street east of Eddington street was laid on private property the deviation would not be a complete defense to the right of the city to recover special assessments under the peculiar circumstances of this case, but at most would only constitute a defense pro tanto. It follows that the court committed no error in deciding the question of law reserved in the affirmative.

Judgment affirmed.